ROSWELL D. PINE, Jr., AND DUFF SMITH, PLAINTIFFS-RESPONDENTS, v. ADAM OKZEWSKI AND OSCAR TRIGGER, DEFENDANTS-APPELLANTS.

Submitted May 12, 1933—Decided August 10, 1933.

Before Justices PARKER, LLOYD and PERSKIE.

For the appellants, *James A. Hamill.*

For the respondents, *William L. Rae.*

The opinion of the court was delivered by

PERSKIE, J. This case comes up before us on an appeal from a judgment of $100 rendered to each of the plaintiffs by the judge of the First District Court of Jersey City, sitting without a jury. The facts are fully set forth in the agreed state of the case. They are as follows: On September 18th, 1932, the plaintiffs, residents of the State of Oklahoma, were enroute from that state to Massachusetts, where one of the plaintiffs, Roswell D. Pine, Jr., was to attend Harvard Law School, and the other plaintiff, Duff Smith, was to attend the Massachusetts Institute of Technology. They were accompanied by another Harvard student, one Wyman Patten. They were passing through Jersey City in a 1931 model Ford coach owned by Smith. The plaintiffs' baggage (grips, valises and bags) were piled on the rear seat and on the floor of the car. As the automobile was proceeding at the rate of about thirty or thirty-five miles an hour, and as it traveled the underground cut used principally by automobiles to and from the Holland Tunnel, to New York, defendants, police officers of the traffic bureau of the police department, chased after the plaintiffs in an automobile and stopped them. The officers asked them whether they had any

guns in their possession and whether they had a driver's license. They were told by the plaintiffs that they did not have any guns in their possession and that under the laws of Oklahoma it was not necessary for an owner to have a driver's license. The defendants then directed the plaintiffs to open their bags so that they could search for weapons. The bags were opened by Pine and officer Trigger; the other officer, Okzewski, stood with his hand on his pistol to "cover up" as he expressed it, "his brother officer." The bags were inspected, clothing pulled out, but no firearms were found. Despite this, the plaintiffs were taken to the Oakland avenue police station of Jersey City for further investigation and there kept in a reserve room where they were told they would have to remain until the investigation was completed. There they remained from six o'clock until eight o'clock in the evening, when a Lieutenant Fox arrived. He examined his records and ascertained that the plaintiffs' explanation as to the laws of Oklahoma in reference to a driver's license was correct. They were then permitted to leave. No charge or complaint of any kind was ever made against them and no warrant issued for their arrest.

The alleged basis for the arrest was that the policemen had been informed by the police teletype system of a stolen 1928 Ford car, black in color. The car plaintiffs were driving was a 1931 Ford car, with black body and green wheels. Following the common law rule adopted by our state that a peace officer has a right to arrest without warrant one whom he has reasonable cause to suspect of being guilty of a felony (*Brown* v. *State*, 62 *N. J. L.* 666; *Collins* v. *Cody*, 95 *Id.* 65; *State* v. *Genese*, 102 *N. J. L.* 134), the court below in our opinion was fully justified in finding that there was no justification for the officers' arrest. They ascertained that the plaintiffs were college students; that the car did not contain firearms; that under the laws of Oklahoma an owner does not require a driver's license. Despite all this they continued to deprive the plaintiffs of their personal liberty.

The plaintiffs were each awarded $100 damages. The brief of the defendants-appellants seem to be limited to one

contention, namely, that plaintiffs, if entitled to anything, are limited to nominal damages. In support of that contention they cite the cases of *Miller* v. *Borough of Belmar,* 5 *N. J. Mis. R.* 224 (altercation with a policeman, who in response to a call by a lifeguard, endeavored to prevent an abusive plaintiff from bathing in a dangerous place), and *Levine* v. *State,* 110 *N. J. L.* 467; 166 *Atl. Rep.* 300 (defendants convictions of being disorderly persons in that they were common burglars loitering on the streets, were sustained). These cases clearly have no application.

In further justification of defendants-appellants' contention they advance a most astounding argument. They say: "The times in which we now live are unlike those of other days when the mere suggestion or suspicion of wrong doing directed to an innocent person was regarded as a serious invasion of his personal rights. Time is now when the citizen, however respected or respectable, owes a duty to the community to yield to a willingness to be subjected to the so-called inconvenience of temporary questioning or detention, in the interest of the preservation of peace and security of persons." This strikes not only a false and discordant, but a most destructive note. It is false in fact and inefficacious in law. To give countenance to such a specious argument is to disregard every fundamental principle of the natural and inalienable rights assured to all men under our form of government. Men of to-day are just as jealous of their liberty as were the men who laid down the principles under our government by which liberty was to be protected and enjoyed by all mankind. The rule of conduct advocated, if followed, would destroy and not preserve the peace and security of men. It is the most drastic and stringent of war-time discipline, sought to be applied in times of peace. This should not be permitted.

This case, it seems to us, is controlled by the case of *Collins* v. *Cody,* 95 *N. J. L.* 65, wherein Mr. Justice Black held:

"The legal principle underlying this case and the one to be applied to the facts is firmly embodied in the roots of the common law, which has been handed down to us from early

times unimpaired, in its full vigor, for the protection of personal liberty against illegal arrests. The liberty of the person is too important a matter to the state to be interfered with without the safeguards with which the law guards such invasions. This court said: The limits to the power of arrest by a constable, without process, was well defined at common law. The regard for the liberty of the person was so great that the common law did not confer upon a mere conservator of the peace the power to touch the person of the subject, of his own volition, except in those cases when the interests of the public absolutely demanded it. To prevent the escape of a felon he had authority to arrest any one whom he reasonably suspected to have been engaged in the perpetration of a felony. To prevent breaches of the peace he had the right to arrest any person who was engaged in, or in his presence threatened to engage in, an affray or other breach of the peace. Beyond this, the law did not allow him to exercise the function of determining whether there was a sufficient cause of the violation of a law to justify an arrest, but placed that power in the hands of officers whose functions were judicial. Only after a determination by such officers, and a warrant, indicative of such determination, could the law be put in operation against the party. *Mayor, &c., of Newark* v. *Murphy,* 40 *N. J. L.* 145; cited with approval by the Court of Errors and Appeals in *Brown* v. *State,* 62 *Id.* 666. All the authorities are uniform to the same effect. 3 *Cyc.* 880 (*b*): 5 *C. J.* 396, ¶ 23 (3). The precept or warrant must be in the officers' possession at the time the arrest is made. *Webb* v. *State,* 51 *N. J. L.* 189."

The judgment is affirmed.